to the next case on the calendar for argument, which is Grundfor v. Bouffard. Council for that case, could please come forward. If it pleases the court, Gerald Sirlin, on behalf of Appellant April Grundford, I'd like to reserve five minutes for a reply. Very good. Thank you, Your Honor. Qualified immunity involves two inquiries, whether an official violated a constitutional right and whether that right was clearly established. Here, with regard to the ID and the interdisciplinary note, the district court found that Grundford met her burden of showing that the law was indeed clearly established. The district court, Judge Hatter, then shifted the burden to the defendant to show that reasonable officials in their position would have believed their actions were lawful. Included that the defendants met their burden, found qualified immunity applied, and on partial summary judgment, dismissed this aspect of the case. This was a faulty analysis. As Saussure, the U.S. Supreme Court, explained, the relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. As we explained in our opening brief, whether the law is clearly established encompasses the question of whether a reasonable official would have known that his or her acts were unlawful. You would have to show that a reasonable official would know that the plaintiff was not speaking as a public employee but as a private citizen. Is that right? That's correct. So you have here a clinical social worker who sees patients, who writes various things. What case establishes, other than a high level of generality, that Ms. Grunfer was speaking here, such that a reasonable public official should have known that she was speaking as a private citizen, given that the speech was this note? Well, Your Honor, you are correct that there is a high level of generality in terms of the cases. There is no specific case that has come down with this fact pattern. However, we are not required to come up with that. Analogous cases are sufficient because otherwise employing that sort of an analysis, you would always find that qualified immunity applies unless the case is on all fours. But in the circumstances of this case, you're looking at whether a reasonable defendant could have believed that these notes that were written by Grunfer fell within the course and scope of her job responsibilities. And here, her supervisors, the supervisors who are the defendants in this lawsuit, expressly acknowledged that they did not fall within the ambit of her course and scope of her employment. For example, Sisk Provencio noted that the notes were not appropriate after a discharge. Buffard, the head supervisor, noted that they were not part of Grunfer's duties. Friend also noted that once a person has been discharged from a facility, these notes don't fall within the ambit of the course and scope. But certainly private citizens aren't able to engage in that form of speech, are they? She couldn't have been speaking in her capacity as a private citizen because no private citizen would have been able to create that form of note and send it through the channels. Sure, but that's going to be true for any whistleblower-type situation. I mean, a person is exposed to certain information based upon their position. And I mean just the fact that she was an employee at a Tuscadero. And so, of course it's- Well, I'm saying if she goes outside and holds a press conference and reveals whatever it was she was trying to reveal in those notes, obviously that's different. But I'm saying the form of the speech that she engaged in, writing up something that, I don't know, only a person employed at the hospital could do and then sending it through the internal chain, it seems to me that's definitely not speech that a private citizen would engage in. But I disagree with it, Your Honor, because first of all she may have come to this information because she was a precipient witness to a crime and a certain understanding of the circumstances but not because of the course and scope of her responsibilities as a social worker at a Tuscadero. And to the contrary, she wasn't acting within the chain of command because she was communicating this note effectively to the police who were doing an investigation, not to her supervisors. Yes, the note went to a woman by the name of Daw, who was at HIMD, the Health Information Management, and she was not in Grunford's chain of command. But this is a chart- I'm sorry, go ahead. But if you look at the note, the discharge note, it doesn't look like a classic whistleblower complaint saying, I've witnessed illegal activities. I mean, you look at it, it looks pretty factual recitation of what happened, what she saw. Perhaps her supervisors didn't like it, but it doesn't look like your classic whistleblower complaint. To me, it suggests Ms. Grunford believed she was doing her job and reciting the facts that she knew she was trying to be helpful. And in that case, aren't her employers reasonably thought that she was acting in her- But the evidence is exactly to the contrary. Her supervisors expressly acknowledged that they didn't understand why she prepared that note. And, in fact, they- But part of that is they didn't maybe like the note because it included some facts, so they were saying that. But, again, there isn't any statement. Can you point to anything in the statement, in the discharge note, that you would say suggests this is intended, as a private citizen, raising red flags or an alarm? I mean, look at it. It seems pretty just a regular factual recitation. But that's exactly my point, that she, in those plain, vanilla recitations, she's acting as a precipient witness to an event, in this case a murder of one of the patients. She's not acting in her capacity as a social worker, revealing the interaction that she's had with a patient who, unfortunately, killed another one of the other patients. I guess the problem that I'm having is not what your client's subjective intent might have been, or even that she was intending this theoretically as something to go to the police or to bring terrible conditions or terrible treatment to the attention of the police or others. It's the very strict limits the Supreme Court has established for qualified immunity in these kinds of actions where we have to be able to point to a case. It doesn't have to be on all four factually, but that would basically put every reasonable public employee on notice that what you're doing violates the Constitution. And here that would include every reasonable public employee in these types of supervisory positions. Know that your client was speaking as a private citizen, not a public employee. Well, let me address, I mean, you've said quite a bit in that one short period of time. For example, Judge O'Connell, who was the first district court judge on the matter, made the determination that Grunford had identified that officials violated her constitutional rights. The only question that was before Judge Hatter was whether that right was clearly established. And we feel that, indeed, the right to speak was clearly established because what was being set forth in Grunford's note was not merely sort of the vanilla recitations of, not merely the vanilla repetition of what occurred, but that it implicated that there was inadequate staffing, monitoring, care of the patients. And so I do think this does fall within the ambit of a whistleblower type circumstance. So I disagree with your premise, both as to the fact that there is indeed a finding by a district court judge in a prior summary judgment motion, because, again, we have to remember the context within which this arose, that that finding, at least there was a disputed issue of material fact as to whether a constitutional violation arose. And so I think that that same would be true here. I think also addressing the other two bases upon which the district court relied were clearly in error, where the court said, you know, the information wasn't publicly or widely disseminated. Well, that's just not a requirement. The U.S. Supreme Court in Giffen stated that it does not need to be, also because Grenford forwarded the interdisciplinary note, the IDN, to .himd, which again is Health Information Management, for inclusion in Carey's file, and the file had already been confiscated by the police, that really the intended audience was the police and not a Tuscadero itself. And finally, the fact that she was a probationary employee, that has, again, also by the U.S. Supreme Court been identified as not a factor, whether you're an employee, a full-time employee or a probationary employee, that's irrelevant. And I think on these bases that were relied upon by the district court judge and focusing upon the summary judgment that was before Judge Hatter, there is no, well, it is a disputed issue of material fact as to whether qualified immunity applies. Turning then to. . . You were below the amount of time you wanted to save her for a vote. It's your choice. I just wanted to look. . . I didn't get very far, but I'd like to then just to go ahead briefly. With regard to the disclosures made to the police officer, a very similar analysis applies. I mean, here Judge O'Connell found that it was a disputed issue of material fact whether Grunford acted in her private capacity. And I believe that finding was warranted and has equal application here before Judge Hatter. . . But the employees were required to talk to the police, correct? No, they were not. And that's a dispute. I thought they were at the very least they were asked to talk to the police. They were availed of the opportunity to do so, and that is a disputed issue, a disputed factual issue that was before the court. If you look at the Tuscadero worksite orientation and duty statement, it does not include speaking to the police. Buford, Chavez, Grunford testified that it was not a part of a clinical worker's job responsibilities. In fact, she was not, Grunford was not directed by her supervisors to assist in the police investigation. Durfee is not, the police officer in question, was not in Grunford's chain of command. Then once she did speak, she was taken to task for in fact doing so. CISC Provencio, her immediate supervisor, became angry with her, directed her to cease speaking to everyone, gave her an EAP, an Employment Assistance Program, which, again, that's disputed, but that has been argued as being a question of discipline, notified her that merit increases were now going to be truncated, and she was subsequently terminated. If Ms. Grunford refused to talk to the police, could her employer fire her under your reasoning? Since it was not within her job responsibility within the course and scope, no, she couldn't have been. That was not required of her. Doesn't that seem odd if someone's not a witness to a homicide that, and she refuses to cooperate, an employer, a public employer can't fire an employee for that? You would hope that an employee in a public service position would assist the employer, but I don't know that termination would be the proper remedy if an employee who is not required to speak with the police fails to do so. Okay. To the extent that I have a few moments. Yes, you'll have time for rebuttal if we'll hear from counsel for the defendants. Good morning, Your Honor. Senator Caprescia-Biasio on behalf of the appellees, Janet Bouffard, Kerry Fran, and Stephen Cisprovencio. Appellees respectfully request that this court affirm the district court's grant of defendant's partial motion for summary judgment and judgment as a matter of law. Rather than go through my prepared notes, I would like to start to address directly some of the issues that the justices fought for. Now, justices benefit in Waterford really, you hit the nail on the head as to the true issue in this case, is that there is no level of specificity that the contours of the First Amendment right were not clearly defined. Well, let me focus on that. We said in Dahlia v. Rodriguez, I believe, that there are basically three guiding principles. Did the employee limit the communication to her chain of command? Was the subject matter part of their typical job duties? And did the employee speak in direct contravention of their supervisor's orders? And it seems to me that there are disputed issues of fact on all three of those that the plaintiff demonstrated, on all three of those that arguably all three are in her favor. Why isn't that enough? That is not enough. Going through those three factors, number one, was it limited to the chain of the command? They were the individuals in which the alleged speech was supposedly given to were Anita Dahl, who was an HIDM, and Officer Durfee, both of which, these individuals, were Atascadero State employees. These are still within the institution. These are not external third parties. But were they in her chain of command specifically? The fact that they worked for the institution isn't the same thing. No. They were not directly within her chain of command. However, this issue was discussed in both the MSJ and at the trial, and it goes beyond just that particular question. I'm sorry, that particular factor. There's also two additional factors that you mentioned about was this statement made to contradict some orders of her supervisors. There was the argument that was brought up by appellant that saying that there was no requirement that Ms. Brunford speak to the internal state hospital police officer in the course of an investigation. I'm talking about if you could address the note here. Okay. Yes. Specifically referring to the note. If you look at the note, content is really key. You read the note. There is no criticism of the hospital institution in the first place. That's the first thing about the note. But it was not clearly established when you look at this note that there was any right for Ms. But I don't think that's what the right has to be. I think the right has to be not on those details but to speak on a matter of public concern. But you were talking about direct contravention of her orders. I mean, it's clear that there are at least disputed issues of fact that they were unhappy about the note. They asked her to change it, and she refused, and then the note in some way got shredded, right? Isn't that enough to establish, at least for summary judgment purposes, that third element, direct contravention of the supervisor's orders? Your Honor, we feel that it is not sufficient. And the reasons why, if you look at the particular issues that you raised, number one, the note and the supervisors being upset about it. We have to look at really the context. This note was written 15 months after Ms. Grunford started. And the problems with the note is that still, after being on two different performance plans and a training plan addressing the incorrect content of the note, she still did not understand the correct items to put in the note. I understand that that's the State's position as to what their problem with the note was, but it strikes me that there's more than enough facts to suggest that the real problem with the note was that they didn't like the content of the speech criticizing the hospital and that it seems to me that there are plenty of facts that she spoke, disputed facts in contravention of her supervisor's orders. I mean, I know what the State's position is as to the true facts, but that's different than the summary judgment standard. Yes. And when we look at the note itself, in the note itself, there is no criticism of the hospital itself. The only thing that it says is that there is something dealing with staffing. Now, looking at the note, she didn't say that there was not sufficient staff on the unit at that time when the Sentinel event happened. She does not mention that. And then also, in the deposition testimony that was presented for the summary judgment motion, there is no indication of the proper amount of staff that needed to be present on the unit. And when she was further asked about it, there was no – there was also questions. She had no idea as to what the proper amount of staff would be. Now, the note, the interdisciplinary note, we were looking at it for the motions for summary judgment, but we also must realize that this also went to trial. And the note itself was brought in as an exhibit to trial, and there was quite a bit of testimony that dealt with the note itself. Are we limited to the summary judgment record with regard to the summary judgment? The summary judgment portion of it? Yes. Yes. But, yes, it is. However, dealing with the content of the note and what actually happened at trial, it is imperative to note that the note was not completely excluded from trial and that there was issues dealing with the note that was also present before the court. With regard to the second Dahlia factor, was the subject within the typical job duties – I mean, you spent a lot of time in your brief arguing the contrary, that by writing this note the way she did, this wasn't a part of her job. And, in fact, she was outside her job duties in the note and the way she wrote the note. So doesn't that second factor clearly cut toward the plaintiff in terms of the three factors in Dahlia? No. It was within the course and scope of her position to write interdisciplinary notes. That was her job. However, it was not within her job to write interdisciplinary notes poorly. And by her writing her notes poorly and writing them late, it does not automatically change this poorly written note now into protected First Amendment speech. Well, I mean, counsel, your characterization of the note is a poorly written note. The plaintiff's characterization of the note is, I'm writing this to point out that this murder never should have happened because if the hospital had done its job, these two people would never have been together unsupervised in a way that allowed one to murder the other. I mean, isn't that what their view of the facts is? Your Honor, if we refer to the actual note which is provided for your reference, the note does not, in fact, say what appellant's counsel is characterizing it as. The note as read simply is a simple resuscitation of the facts that happened on that day. There is no criticism of what happened in the hospital or the appropriate staffing levels or whether these two individuals should have been placed together. Well, I mean, again, perhaps in the light most favorable to the state, there's no criticism, but it strikes me that in the light most favorable to the plaintiff, this could easily be read as criticizing what the state did without saying, I'm criticizing what the state did. I mean, it sounds to me like I don't see it's a stretch to take that inference in the light most favorable to the plaintiff as a criticism, to take this note as a criticism. Thank you. Your Honors, the appellees in analyzing the note, they felt that the note was inappropriate in its context, in its form, in its substance, and that was in light of the performance training plan that Ms. Grunford was subject to. At this particular time when this note was written, Ms. Grunford was on yet another training plan where 100% of her notes had to be reviewed before they were submitted. It was not only that the note was poorly written, it was also that the note was not properly, the proper mechanisms in ensuring that the note was properly reviewed before it was submitted. That was also a factor that was taken into consideration. And as the district court pointed out, that it was reasonable for the appellees to rely upon this note as yet another example after months and months of training that Ms. Grunford still didn't understand her job. She still was not able to adequately perform her job. And because of that, that at the end of the review, in looking at the entire 15 months of performance, they found that her work was still inadequate. And that at that time, because of the statutory deadline that was put in place, the one-year timeline, that they had to review everything and say that Ms. Grunford was not appropriately able to perform her job, her duties as a social worker. Could you shift to the statements of the police officer and just focus on that for a minute? I'm trying to get straight. Do you know or does the record show when exactly that occurred in relation to the incident? Yes. The discussion with Officer Durfee took place that same day as the Sentinel event on May the 28th. The record clearly shows that all individuals who were employed at Atascadero State Hospital and who were present on Unit 26 that day were directed per the hospital policy to meet with the internal officers that were conducting the investigation on that day. And so is she still – I don't know how clinical social workers are paid, but is she still on the clock when she's doing this interview? She's still on the clock. She's still in the building. The record clearly shows that her, along with all the other employees, were in the building, and they were just escorted downstairs. They had to wait in a general area, as the record reflects, and they went one by one to meet with Officer Durfee to speak about what happened that day. And the content of what happened, she says in her trial testimony, I discussed the same exact items that were in the note. Well, so your opponent says that there – well, the other thing I'm trying to get straight is that I think you say in your brief that she was required, like given an order, to speak to this police officer. And, of course, your opponent says that that never occurred. Help me understand where things stand on that front. As was stated in the trial testimony, that Atascadero State Hospital policy is that all employees are required to participate in any investigation and are able to – that they must follow the – that they must, you know, they must in the course and scope of their employment to disclose information to the – to conduct any internal investigations. And that is exactly what Ms. Grunford did. She was not picked out solely or especially. She did not do this on her own. She did not make any disclosures to any outside individuals. She didn't make any disclosures to the police herself. She simply spoke to the internal police. Okay. And there's – and furthermore, there, as was raised in the appellant's reply, there is no foundation to make any inference that Officer Durfee spoke with any of the appellants about the contents of the interview. There was only the – there was only the testimony that Ms. Grunford provided saying that she spoke to Officer Durfee at trial. Officer Durfee did not provide any trial testimony or any other – any other statements that he spoke to the appellants at all about any statements that Ms. Grunford made. So just their internal speaking to one another does not mean that the appellants had any knowledge or it's not reasonable to infer that there was any knowledge about that. And in conclusion, briefly I would like to point out that it is black – black-letter law that – that this first-denied MSJ that opposing counsel continuously refers to, that the denial of the motion for summary judgment motion is never the law of the case because the factual judgment is still ongoing. So that constant referring to that is – is inappropriate because pretrial rulings often based on incomplete information don't bind district judges for the remainder of the case. And – and finally, the First Amendment does not prevent appellant supervisors from assessing the entirety of her performance during her probationary period, including the alleged protected speech, and then reaching the conclusion that she was unable to perform the job by filling her on probation. To the contrary, assessing job performance is the very reason to have a probationary period. And appellant's interdisciplinary note and her speech to Officer Durfee was not protected by the First Amendment because it was made pursuant to her official responsibilities. Thank you, counsel. Thank you. Let's – yes, you have a minute and a half, it looks like, for rebuttal. Thank you, Your Honor. I don't really have that much to say in response. We never did argue that this was law of the case. What we did argue is that simply there are very limited issues before the Court here today with regard to both the – the note and with regard to the conversation, the interview between the officer and Ms. Grunford and the basis for immunity. The Court seems to recognize that we're not arguing that there may not have been trivial inadequacies in the note, but these trivial inadequacies had been overlooked for all other employees, problems that were apparent in this note were ignored in other notes by other employees. And what we're looking at is simply the fact that almost immediately after Ms. Grunford engages in the interview, writes this – the note, after she's been performing very well, she's taken off any programs, she's gotten great reviews from independent individuals, Mr. Light, and has been found to be operating at a very high level of performance, then she comes off with these two documents, well, the note and the interview, and she's terminated and told, you know, within short order, you're not getting the raise that we had discussed two weeks before, now you're getting fired. And we believe that's entirely based upon her communications. Thank you, Your Honors. Thank you very much, Counsel. Case to start is submitted.
judges: Watford, Bennett, Lee